BOWLES, Adm'r, Office of Price Administration, v. MINISH et al.

Civil Action No. 454.

District Court, S. D. Alabama, S. D.

July 1, 1944.

Jack Crenshaw, of Montgomery, Ala., Clifton C. Inge, of Mobile, Ala., and Daniel R. Boyd, of Montgomery, Ala., for plaintiff.

A. C. Lee and C. L. Hybart, both of Monroeville, Ala., for defendant.

McDUFFIE, District Judge.

### Findings of Fact.

1. The Woods Products Company located at Monroeville, Alabama, is owned by Mrs. Janie L. Minish, one of the respondents, and the foster mother of James L. Minish, another respondent, who is manager of said manufacturing company. This company for several years has manufactured various kinds of furniture and in March 1943 began to make chests of drawers. Its customers were retailers in 1942, and retailers and jobbers in 1943. On or about May 1, a few days prior to the filing of the petition in this cause, the manufacturing company ceased to manufacture the chests of drawers and began the manufacture of bomb boxes for the Continental Gin Company, which company is operated under a contract with the War Department of the United States Government.

2. While the manufacturing company had filed with the proper authorities of the Office of Price Administration its ceiling prices in September 1942, it failed to file such prices, according to regulations, for the manufacture of bomb boxes. Likewise, it failed to file its ceiling prices to jobbers in 1943 when it began to sell its products to jobbers. There is no dispute as to the price received by the manufacturing company from all of its purchasers, which price was $9.45.

3. During the month of December 1943, the respondent, C. E. Parnell, who had been connected with the manufacturing company as a furnisher of raw material, conceived the idea of a partnership with James L. Minish, the manager of the manufacturing company. The said Parnell and Minish, after consulting and receiving advice from their attorneys, formed a partnership under the firm name of "The Furniture Sales Company" in February 1944. After such partnership began its operations, the manufacturing company sold practically its entire output of chests of drawers to the partnership, receiving $9.45 therefor, and the partnership in turn sold to retailers at $12.45. At no time prior to the filing of the petition here had the partnership, The Furniture Sales Company, filed its ceiling prices with the proper authorities of the O.P.A. Doing business without having filed the ceiling prices according to regulations is the basis of this petition for injunction, and the allegations setting forth the failure to do so are without dispute.

4. Motion for a temporary injunction on the petition of the Administrator, Chester Bowles, was granted by this Court on May 5, 1944. The question now presented on the merits is whether or not this Court should make the injunction permanent or dissolve it and dismiss the petition.

5. The undisputed facts are that at the time of the filing of this petition, neither the manufacturing company nor the Furniture Sales Company nor any of the respondents, were manufacturing and selling the chests of drawers. Neither the company nor the partnership had on hand for sale any of the products for which the failure to file the ceiling prices is the basis of the petition; and the Court finds no evidence of a threat on the part of any one of the respondents to continue to operate in violation of the regulations of the Bureau of Price Control. There is no evidence of an intention to do so on the part of any of them. On the other hand, this Court has the assurances from all respondents that they will not operate in the future without full compliance with all laws and rules and regulations of the Office of Price Admin-

istration. The Court further finds that the partnership, since the filing of this petition, between C. E. Parnell and James L. Minish, has ceased to do business and has been dissolved, and the only complaint about the manufacturing company was that it failed to file its price ceiling when it began to sell to jobbers, even though its sales to jobbers were at the same prices as its sales to retailers. This Court accepts the pledges and assurances of the respondents as having been given in good faith.

### Conclusions.

1. This Court has noted with interest that the Administrator makes a *demand* upon the Court for an order in this cause, and the Court is assuming that those acting for the Bureau of Government involved here sincerely believe that the Act of Congress makes mandatory upon the Courts the issuance of injunctions in this and similar cases. Such an impression and such a contention has doubtless been many times made before the Courts, but the rulings and precedents of the Appellate Courts, as well as District Courts, generally, have been, and are now, otherwise. In a very recent decision of the Court of last resort in the nation, it was held that the question of issuing an injunction was a discretionary matter, under the section of the Price Control Act which provides that "a permanent or temporary injunction, restraining order, or other orders shall be granted" upon a showing by the Price Administrator that a person has engaged, or is about to engage, in a violation of the price regulations under the Act. Section 205(a), 50 U.S.C.A.Appendix, § 925(a). See Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 591. It was held by the Court that Congress did not intend to make mandatory "the issuance of an injunction merely because the Administrator asks it." It was also pointed out that the legislative history of the Price Control Act indicates the words "shall be granted" are less mandatory than a literal reading of the Act might suggest. The Court further observed that Congressional restrictions on the judicial equity power should not be "lightly implied". See Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587; Meredith v. City of Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7; United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211. It is clear that the Congress of the United States has not intentionally designed Sec. 205(a) of the Emergency Price Control Act to destroy the powers of Courts to do equity and, therefore, it has not intentionally taken from the Courts the traditional exercise of their discretion on the question of whether or not an injunction should be granted. This Court is not unmindful that a discretionary power may be abused, but that presents another question.

The facts in this cause, together with the assurances of the respondents, make, in the opinion of this Court, the issuance of an injunction unnecessary. The Court fails to see any injury to the public in its refusal to grant the petition of the Administrator. All good citizens must, and generally do, conceive and appreciate great merit in the functions of the Office of Price Administration, and its usefulness to the nation, especially during the days of war. This Court is in no wise critical of those agents of the Government carrying out the functions of the Bureau of Price Control in filing a petition in this case. It must be presumed that they were acting in compliance with their sense of duty, yet, change in conditions, the cessation of business, the lack of evidence showing threats of continued violations, as well as an intention to injure the public, together with the assurances of the respondents, make it clear that an injunction in this cause is unnecessary.

3. The Court has applied the following principles in its consideration to determine whether or not sufficient cause has been shown to justify the issuance of an injunction in this case:

"(1) The equities of the case must be in favor of the party seeking the injunctive relief.

"(2) The purpose of an injunction is not to punish a guilty party for past violations, but to prevent his future noncompliance with the law.

"(3) The issuance of the injunction, admitting past violations, should depend upon whether there is a reasonable likelihood of violations of the law in the future.

"(4) The question as to whether more good or more harm will result from the issuance of the injunction prayed for should be considered.

"(5) The issuance vel non of the injunction in this cause rests in the discretion of the court." See Walling v. Gulf States Paper Co., 5 Cir., 143 F.2d 301.

The Court believing as aforesaid, that the temporary injunction should be dissolved, and the petition denied, such a course will be followed by appropriate order.