**Gordon McMAHON, individually and on behalf of all other tenants and former tenants similarly situated, Plaintiff,**

v.

**NEW CASTLE ASSOCIATES, Pan American Associates, Richard I. Rubin & Co., Defendants.**

**Civ. A. No. 8707.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Aug. 6, 1987.
Decided: Aug. 21, 1987.

John E. James, and Robert K. Payson, of Potter Anderson & Corroon, Wilmington, and Michael Malakoff, and Fred S. Longer, of Berger, Kapetan, Malakoff & Meyers, P.C., Pittsburgh, Pa., of counsel, for plaintiff.

Mary M. Johnston, William F. Lynch, II, and Edward M. McNally, of Morris, James, Hitchens & Williams, Wilmington, and Michael S. Silberman, of Silberman & Raslavich, Philadelphia, Pa., of counsel, for defendants.

## OPINION

ALLEN, Chancellor.

This class action, in which a tenant seeks the recovery of money from his landlord, is before the Court on defendant's motion to dismiss for lack of equity jurisdiction. 10 *Del.C.* § 342. For the reasons that follow, I conclude that the complaint alleges essentially a legal claim for damages. That is, it alleges neither a relationship between the parties uniquely recognized in chancery nor facts which, if true, would entitle plaintiff to any remedy uniquely available from this court. Therefore, for the reasons more fully set forth below, I conclude that plaintiff's remedy at law is fully adequate and that, consequently, this court lacks subject matter jurisdiction in this matter.

### I.

The relevant facts as they appear from the amended complaint are as follows.

In 1977 plaintiff, Mr. Gordon McMahon, entered into a ten year lease with defendant New Castle Associates for commercial property located within Christiana Mall, in which he intended to and now does operate a retail book store. Under the terms of this lease, the landlord is obligated to supply electricity and, to do so, it has installed transformers and other equipment necessary to transform and deliver the high voltage current it buys from the public utility. Under the lease, plaintiff's rent is calculated through a formula that includes a component designed to compensate the landlord for the provision of electricity (the "Energy Rent Inclusion Component"). Consumption of electricity by the tenant is not metered. Rather, it is estimated by the landlord, with the assistance of an expert, on the basis of the total square footage of the unit occupied and the type of business and equipment operated thereon. The lease provides an arbitration mechanism for resolving disputes concerning the amount of the Energy Rent Inclusion Component.

Plaintiff contends that, from the beginning of his tenancy, defendant's estimates of electricity usage for billing purposes

have greatly exceeded the tenant's actual usage. He asserts that this practice violates a provision of the Landlord Tenant Code, which became effective July 9, 1981, governing metering and charges for utility services, *see* 25 *Del.C.* § 5114, and, further, that by making a profit on the resale of electricity to the mall tenants, the defendant has violated the anti-resale provision contained in a Public Service Commission tariff.[1] Defendant's alleged violation of Delaware law, in turn, is said to constitute a breach of a term in the 1977 lease under which, plaintiff argues, the parties agreed to comply with all relevant applicable statutes and rules and regulations.

In addition, in his brief plaintiff characterizes the relationship between tenant and landlord as a fiduciary relationship under the particular circumstances present in this case. Specifically, he claims that defendant is his agent in purchasing electricity for him and that the amount defendant charges is determined by information within in the exclusive possession and control of the agent and unavailable to the plaintiff. These considerations are said to convert the normally wholly commercial relationship of landlord-tenant into one of special trust and dependency which ought to be supervised by chancery.

Based on the foregoing allegations, plaintiff asserts liability in two counts. In count I, plaintiff asserts that defendants should be held as constructive trustees for amounts charged for utility service in excess of amounts legally due. The substantive basis of the claim asserted in Count I is simply that the charges for electricity have been "in violation of Delaware law" (¶ 32). In Count II, plaintiff pays somewhat greater attention to the basis of the

right asserted. There it is claimed that the amount charged for electricity violates Section 5114 of Title 25 of the Delaware Code[2] (¶ 38), and that it violates the lease which allegedly incorporates evolving Delaware law (¶ 39). The same relief is requested on both counts: 1) an accounting for electrical charges collected in excess of those permitted under the Landlord Tenant statute; 2) judgment in the amount of the difference between legally permissible and actual charges; 3) an injunction prohibiting defendants from charging in excess of the actual cost to defendant of electrical utility service; 4) interest; and 5) costs, including attorneys' fees.

This action was originally filed as a class action on behalf of all similarly situated tenants on November 10, 1986. Defendant New Castle Associates has moved, pursuant to Chancery Court Rule 12(b)(1), to dismiss the action for lack of subject matter jurisdiction in this court.

## II.

Chancery jurisdiction is not conferred by the incantation of magic words. Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will itself excuse the court, upon a proper motion, from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate. If a realistic evaluation leads to the conclusion that an adequate legal remedy is available this court, in conformity with the command of section 342 of title 10 of the Delaware Code will not accept jurisdiction over the matter. *Hughes Tool Co. v. Fawcett Publications,*

---

1. The complaint simply charges that defendant has violated 25 *Del.C.* § 5114 and "Delaware law." In his brief, plaintiff elaborates upon the conclusory aspect of this pleading by specifying the anti-resale regulation of the Public Service Commission.

2. Section 5114 became effective on July 9, 1981 and provides in relevant part:

    (b) A landlord who charges a tenant separately for utility services shall not charge or receive from tenants an amount for such utilities which exceeds the lesser of:

    (1) The charge which would be paid if the tenant were a direct customer of the public utility; or

    (2) The proportionate share of the bulk billing payable by the landlord, based upon the measurement in accordance with subsection (e) of this section.

One of the legal questions that this litigation will raise is whether the Energy Rent Inclusion Component constitutes a separate charge for utility services within the meaning of this statute.

*Inc.,* Del.Ch., 297 A.2d 428, 431 (1972) *rev'd on other grounds,* Del.Supr., 315 A.2d 577 (1974); *Chateau Apartments Co. v. City of Wilmington,* Del.Supr., 391 A.2d 205 (1978).

In this instance, plaintiff has attempted to assert many of the traditional grounds for equity jurisdiction. He asserts that a *fiduciary duty* exists between his landlord and himself; that the matters treated by this suit are complex and require an *accounting* by the landlord; that a *constructive trust* should be imposed upon the funds that have been collected in excess of rent legally due under the lease; and that an *injunction* should be entered requiring steps to be taken so that future rent is calculated appropriately. Finally, plaintiff asserts that this *class action* is necessary in chancery to foreclose a *multiplicity of suits* that will otherwise be necessary to fully protect plaintiff's rights and the rights of others similarly situated. I conclude that none of the asserted bases for equitable jurisdiction withstand analysis and that the remedy of money damages for any wrong proven will be fully adequate in the circumstances. Therefore, defendants' motion to dismiss will be granted and this action will be dismissed sixty days after an order entered on this motion becomes final unless, prior to that time, plaintiff files a written election of transfer of this matter to the Superior Court. *See* 10 *Del.C.* § 1902.

### III.

#### *The Claim that "Fiduciary" Duties are Involved*

■ Among the most ancient of headings under which chancery's jurisdiction falls is that of fiduciary relationships. The classic example—the accountability of trustees—demonstrates the reason why chancery takes jurisdiction over fiduciaries. The "fiduciary" duty of a trustee to deal with the trust *res* only for the benefit of the *cestui que trust* and not for his own benefit is a creation of equity. At law a trustee, as the legal owner, may deal with trust property as his own. The rights of a beneficiary are only recognized in equity.

Accordingly, an action predicated upon such rights is properly maintained in a court of equity and only a court of equity. Bogert, *Trusts and Trustees* § 870 (1982). A similar rationale underlies Chancery's traditional jurisdiction over corporate officers and directors. The duties they owe to shareholders with respect to the exercise of their legal power over corporate property supervene their legal rights, *see, e.g., Singer v. The Magnavox Co.,* Del.Supr., 380 A.2d 969, 975 (1977), are imposed by equity and are recognized and enforced exclusively by a court of equity. *Harman v. Masoneilan International, Inc.,* Del.Supr., 442 A.2d 487, 498 (1982).

Chancery takes jurisdiction over "fiduciary" relationships because equity, not law, is the source of the right asserted. Thus, when this court, for example, said "A fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another," *Cheese Shop International, Inc. v. Steele,* Del.Ch., 303 A.2d 689 (1973), *rev'd on other grounds,* Del.Supr., 311 A.2d 870 (1973), attention must be paid to the word "special" lest the statement be thought to describe too broadly chancery's concerns with relationships where an element of trust, as commonly understood, is present. One may place trust in a workman of any sort and does place trust in one's physician, but it would hardly be contended that such trust would warrant chancery's assuming jurisdiction over a claim that a workman or physician caused injury by want of due care—although a claim of that very type against a trustee will be entertained in a court of equity. *Pennsylvania Company v. Wilmington Trust Company,* Del.Ch., 186 A.2d 751 (1962), *aff'd sub nom Wilmington Trust Company v. Coulter,* Del. Supr., 200 A.2d 441 (1964).

I need not now attempt to define those elements of a relationship that will supply the "special" aspect that will fit a particular relationship as one that, without more, (i.e., without regard to the remedy sought) will support chancery jurisdiction. Our law has acknowledged several such relation-

ships beyond that of express trustee and corporate officer or director: general partners (*Boxer v. Husky Oil Co.*, Del.Ch., 429 A.2d 995 (1981)); administrators or executors (*Glanding v. Industrial Trust Co.*, Del.Supr., 45 A.2d 553 (1945)); guardians (*In re Bunting*, Del.Supr., 311 A.2d 855 (1973)) and, in some instances, joint venturers (*J. Leo Johnson, Inc. v. Carmer*, Del. Supr., 156 A.2d 499 (1959)) or principals and their agents (*Science Accessories v. Summagraphics*, Del.Supr., 425 A.2d 957 (1980)).

Here the relationship between the parties is a straightforward commercial relationship arising from contract. It is in all of its aspects an arms-length relationship. It involves no element of confidentiality or joint undertaking which sometimes extends chancery's concern to principals and agents or to co-venturers. If plaintiff entered the lease agreements with an expectation of honest dealing on the part of defendant (which expectation, one imagines, attends every contractual undertaking) and now wishes to characterize that expectation as placing trust in defendant is beside the point. There is no basis in our developed law to accord that expectation the status of "special trust" that would render the legal remedy for breach of contract inadequate. The duty to act honestly and in conformity with statutory law that forms the gist of the claim is, in the circumstances presented, a duty fully recognized at law. *Cheese Shop International, Inc. v. Steele, supra.*

The nature of chancery's particular mission forecloses the development of fixed and limited categories of relationships over which equity will take jurisdiction in an appropriate case. We cannot predict all categories of relationships in which that power may properly be called into action. In all instances, however, it is necessary that the legal remedy either not exist or be found to be inadequate. Here the relationship is not "fiduciary" in the traditional sense; it is wholly commercial and recourse for violation of the duties assumed by the parties is, in my opinion, in the law court not in chancery.

### The Claim that an Accounting is Required

■ Fiduciaries, because they hold property or exercise power for another, are required to account in chancery for their stewardship. *See, e.g.*, Chancery Court Rule 115. Thus, a request for an accounting by a *fiduciary* is a recognized basis for chancery jurisdiction. *Boxer v. Husky Oil Co., supra; Hughes Tool Co., supra.* In addition, however, under traditional learning, in certain circumstances, the remedy of accounting may be had in chancery against one who, like defendant here, is not a fiduciary. Historically, an accounting by a non-fiduciary has been required by a court of equity only when the accounts are so complex that the legal remedy is likely to prove inadequate. *See Pomeroy's Equity Jurisprudence* § 1421 (1941). This historical basis of equity jurisdiction reflects the fact that discovery in civil litigation was originally available in chancery but not in the law courts. Given the development of broad and liberal discovery rules in our law courts, it now seems likely that equity shall rarely, if ever, have to be resorted to in order to determine the state of accounts in a purely commercial relationship. In all events, the discovery rules in the Superior Court which, like our own, are modeled on the federal rules of civil procedure, are fully adequate to unearth the relevant facts of this dispute and there is no need to resort to chancery in order to uncover the pertinent information. I therefore conclude that, even if defendant is in sole possession of information relating to its costs of supplying electricity and relating to the basis for the calculation of the Energy Rent Inclusion Component, the prayer for an accounting does not confer jurisdiction in this instance. *Chateau Apartments Co. v. City of Wilmington, supra.*

### The Request for an Injunction

■ This court has jurisdiction to consider a complaint that states a claim upon which an injunction might properly be entered. However, one may not convert a claim for money damages arising from a breach of a commercial contract or breach of a statutory duty into a claim maintaina-

ble in equity by the expedient of asking that the defendant be enjoined from breaching such duty again. At a minimum, for a complaint to properly state a claim cognizable in equity solely because of a request for an injunction, the facts alleged must, if assumed to be true, create a reasonable apprehension of a future wrong. *See, e.g., First National Bank v. First Bank Stock Corp.*, 197 F.Supp. 417, 428 (D.Mont.1961); *U.S. v. National City Lines*, 134 F.Supp. 350 (N.D.Ill.1955); *Bowles v. Minish*, 56 F.Supp. 153 (S.D.Ala. 1944). Here, accepting the well-pleaded factual allegations as true, there is no such threat shown and thus no basis for the entry of an injunction, even should plaintiff prove correct in its contention that defendant has been breaching its lease and the subsequently enacted landlord-tenant act. Moreover, defendant has undertaken in court to respect *in futuro* the judicial determination of the legal issues raised by the pleadings. Had plaintiff pleaded facts that showed reason to apprehend a threat of future violation of judicially-determined rights and duties, such an undertaking would likely not prove an important consideration in determining whether jurisdiction had been established. But, where the complaint does not state such facts, a decision to relegate the plaintiff to a determination of his issue in a law court is made easier by such an undertaking. *See Chateau Apartments Co., supra* at p. 208.

### The Claim that a Multiplicity of Suits will Ensue if Chancery Does Not Take Jurisdiction

■ Related to the request for injunctive relief as a basis for chancery jurisdiction is plaintiff's assertion that it is necessary for this court to assume jurisdiction to avoid a multiplicity of suits at law. Conceptually, the notion of a multiplicity of suits may address two distinct situations. The first is where this very plaintiff will, unless some special remedy available in chancery is awarded, be required to repeat his action at law in order to get full or complete relief. The second is where a number of other persons similarly situated to the plaintiff will, in the course of events, be required or

elect to bring a suit similar to the one plaintiff has brought. The classic example of the first sort of multiplicity is an action to abate a nuisance or to enjoin a continuing trespass to land; the prototype of the second sort of multiplicity is the class action, a creature of equitable origins.

Each type of multiplicity is urged here as a ground to maintain this suit in this court. As to the first type of multiplicity—the likelihood that plaintiff will be required to sue defendant repeatedly—it is urged that the landlord has, in determining the utility component of the rent due, continuously violated plaintiff's rights and that an action at law resolving the question for past periods will not necessarily resolve it for future periods. In support of this argument, plaintiff points to the case of *New Castle Associates v. Leotsa, Inc.*, Del.Com.Pls., C.A. No. 148–03–81, DiSabatino, J. (January 13, 1983), an action by this defendant to collect rent due from a tenant in the building involved in this litigation. There the court refused to enter judgment in the full amount sought, finding, after a metering device was installed pursuant to court order under Rule 34, that the utility component of the rent sought was calculated on an excessively high estimate of electricity used and, thus, was itself higher than it should have been. *Leotsa* demonstrates, plaintiff says, that even after a legal determination that its estimation technique is invalid, defendant has continued to employ it in violation of Section 5114 of the landlord-tenant act. The fallacy of this argument, however, lies in its major premise: *Leotsa* did not purport to address the questions raised by the complaint in this action: whether Section 5114 applies, directly or through Section 3319 to the lease, to the charge that defendant (and the lease) denominates as the Energy Rent Inclusion amount. *Leotsa* provides, in my judgment, no basis to suppose that an action at law which determines the legal issue posed will not resolve that question between the parties once and for all. On this point the instant suit seems indistinguishable from *Chateau Apartments Co. v. City of Wilmington*, Del.Supr., 391 A.2d 205, 208

(1978) where in answer to a multiplicity claim the court stated:

> For equity to assume jurisdiction where a multiplicity of suits is the irreparable harm, the plaintiff must show more than a mere possibility of such litigation; the danger ... must be a real one ... the City could ignore a determination [in the Superior Court] that their rates were unlawful and continue to charge unlawful water rates, [but] we do not find the danger realistic.[3]

In this case, there is no realistic basis to suppose that an injunction will be necessary to avoid repeated litigation once the main legal dispute between the parties is duly resolved by a court of competent jurisdiction. As indicated above, defendant has stated its intention to act in a way consistent with its legal obligations. The issue that needs judicial resolution is what those obligations are. There is absolutely no basis to suppose it will need to be resolved more than once. Indeed, the doctrine of *res judicata* offers assurance that it need not.

The other sort of multiplicity of suits involves multiple parties. Class actions were an invention of equity designed to afford an efficient remedy in circumstances in which the legal remedy was, as a practical matter, rendered inadequate by the large number of persons similarly interested in a matter. *Montgomery Ward & Co. v. Langer,* 168 F.2d 182, 187 (8th Cir.1948).

It is well settled in this state, however, that not every class action that satisfies the standards of Rule 23 is for that reason properly maintained in this court, even though the Superior Court has not adopted a class action rule. *See Wilmington Trust Co. v. Schneider,* Del.Supr., 320 A.2d 709 (1974). *Schneider* and the law upon which it was based dictates that the Court of Chancery will not take jurisdiction over a matter that satisfies the tests of Rule 23 unless that action is otherwise maintainable in equity. Thus, ordinarily, equity will not take cognizance of an action unless there is a colorable need for equitable relief or the assertion of a distinctly equitable right.[4]

This rule, which essentially disallows the second of the two forms of multiplicity described above as a sole basis for equitable jurisdiction, has much to commend it. Any other rule would require this nonjury court to entertain, for example, claims for damages arising from mass torts. But, where no equitable remedy is warranted or equitable right asserted, the constitutional right to a jury trial in suits in which a jury was permitted at common law[5] would make entertainment of such suits problematic. While our statutes provide a technique for the trial of fact issues before a jury in the Superior Court,[6] the availability of that somewhat cumbersome procedure hardly suggests itself as a sensible answer to the problem that would be encountered

**3.** Compare the somewhat different legal test employed in an earlier opinion—*Cheese Shop International, Inc. v. Steele,* Del.Supr., 311 A.2d 870, 871 (1973) ("It is conceivable that, absent an equitable remedy, the plaintiff will be obliged to institute separate proceedings at law each month ..."). But the conclusion that a threatened multiplicity of suits at law provided equity jurisdiction there was an alternative basis for the holding in *Cheese Shop.* As the author of both opinions was the same admired jurist, one is reminded of the comment of Justice Frankfurter that "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters National Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949).

**4.** In *Harman v. Masoneilan, supra,* the Supreme Court, after determining that the claim asserted (for breach of a corporate director's fiduciary

duty to the corporation and its shareholders) was one that fell within chancery's exclusive jurisdiction, further supported its conclusion that jurisdiction was therefore well-laid in chancery with reference to the unavailability of a class action remedy in the Superior Court. *See* 442 A.2d at 500. I do not read that practical comment as suggesting any deviation by our high court from the long-standing rule it recognized in *Schneider.*

**5.** *See* Del. Const. (1897) Art. I § 4; Del. Const. (1776) Art. 25; *Nance v. Rees,* Del.Supr., 161 A.2d 795 (1960).

**6.** 10 *Del.C.* § 369 provides as follows:

> When matters of fact, proper to be tried by a jury, arise in any cause depending [sic] in Chancery, the Court of Chancery may order such facts to trial by issues at the Bar of the Superior Court.

608

by maintaining *legal* claims for *money damages* in this court solely on the basis of numerosity of parties. Thus, in Delaware, with our separate courts of law and equity, "[m]ultiplicity does not mean multitude, and equity will not interfere where the object is to obtain a consolidation of actions, or to save the expense of separate actions ...". *Murphy v. City of Wilmington*, Del.Ct. of E. and A., 6 Houst. 108 (1880) quoted in *Wilmington Trust Co. v. Schneider*, Del.Supr., 320 A.2d 709, 711 (1974).

### The Request for a Constructive Trust

■ Finally, I turn to plaintiff's attempt to predicate chancery jurisdiction upon his request for the imposition of a constructive trust upon amounts collected by defendant in excess of rent to which it was legally entitled.

A constructive trust is an equitable remedy of great flexibility and generality. "The principle is that where a person holds property in circumstances in which in equity and good conscience it should be held or enjoyed by another, he will be compelled to hold the property in trust for that other." Hanburg and Maudsley, *Modern Equity* (12th ed. by J. Martin, 1985) p. 301. Thus, in its classic manifestations at any rate, a constructive trust was impressed upon specific property and the legal owner was required by equity to hold that property as if upon a trust. This case, of course, has nothing to do with the notion of constructive trust as so understood. Here, plaintiff does not seek to impress specific property with a claim to beneficial entitlement; rather, he seeks a recovery of money.

Until recently, the English practice has been to treat a constructive trust, once declared judicially as a substantive trust; the American view, however, has been to view the device as a remedy that avoids a continuing relationship by requiring transfer of the property to the plaintiff who has established equitable entitlement thereto. *See Adams v. Jankouskas*, Del.Supr., 452 A.2d 148 (1982); *Restatement of Law, Restitution* § 160 (1937). However, even when a constructive trust is viewed as "a

remedial not a substantive" institution, R. Pound, *The Progress of the Law-Equity*, 33 Harv.L.Rev. 420 (1920), it remains primarily a proprietary one; that is, a remedy relating to specific property or identifiable proceeds of specific property. As Professor Martin has stated:

> "Thus, in a case of unjust enrichment, the plaintiff will sue in quasi-contract for recovery; but if the defendant still has the property, and either the plaintiff wants specific recovery, or the defendant is insolvent, or the property has increased in its value while the defendant held it, the plaintiff will be able to rely upon the proprietary remedy of a constructive trust." Hanburg and Maudsley, *Modern Equity* (Martin ed.) at 306.

*Accord, Restatement of Law, Restitution,* § 160 comment a (1937).

There are, of course, instances in which the constructive trust concept has been applied to the recovery of money. *See, e.g., Adams v. Jankouskas, supra; Brophy v. Cities Service Co*, Del.Ch., 70 A.2d 5 (1949). But in cases of that kind, there will be either an identifiable fund to which plaintiff claims equitable ownership through tracing or the legal remedy will be inadequate for another reason—such as the distinctively equitable nature of the right asserted.. For example, in *Brophy v. Cities Service Co.*, the legal remedy was inadequate because the right asserted—fidelity of a corporate officer to the corporation—was an equitable right. That equitable right entitled plaintiff not simply to damages that it could show but to profits defendant had secretly realized from the misuse of the corporation's secret information. Thus, it was, in truth, the equitable nature of the right asserted in that case that supplied the basis for chancery jurisdiction. Similarly, in *Adams v. Jankouskas, supra*, where the constructive trust device was used to recover money, the relationship between plaintiff and the decedent against whose estate he made claim was one uniquely cognizable in equity. It was a case "in which joint funds were committed in obvious trust to one partner and then pooled to purchase property and make investments for the mutual benefit of both."

452 A.2d at 153. Thus, it was the equitable nature of the claim asserted in that case that provides an unarguable basis for chancery jurisdiction.

When the right asserted is not distinctly equitable in origin, the request for a constructive trust will ordinarily succeed in conferring jurisdiction in equity only when a claim to specific property is asserted. For example, if A defrauds B of Blackacre, equity should stand ready to require a reconveyance through the device of a constructive trust upon proof of the elements of fraud even if there is no fiduciary relationship between them. *See, e.g., Ruhe v. Ruhe,* Md.App., 113 Md. 595, 77 A. 797, 800 (1910). If, however, A defrauds B of $10,-000, equity will not—absent some other fact that renders the legal remedy for the recovery of money inadequate—entertain a suit to recover the money, even if, as here, plaintiff characterizes the remedy as a request to impress the funds wrongfully obtained with a constructive trust. *Cochran v. F.H. Smith Co.,* Del.Ch., 174 A. 119 (1934).

Here we have no claim to equitable ownership of specific property and, thus, the prayer for the remedy of constructive trust does not alone confer jurisdiction on this court. Nor is the right asserted when properly understood based upon a fiduciary duty or other duty recognized solely in equity. All that the complaint presents, in my view, is a request for damages for breach of an arms-length relationship. So long as we remain undazzled by labels, a request of this kind must be denied. Plaintiff's remedy at law is fully adequate to redress any valid claim that may be presented by his complaint.

Defendant may present an implementing order on notice.