**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: September 8, 2014
Date Decided: September 17, 2014

Sharon Oras Morgan, Esquire
Carl D. Neff, Esquire
Fox Rothschild LLP
Citizens Bank Center
919 North Market Street, Suite 300
P.O. Box 2323
Wilmington, DE 19899-2323

James S. Green, Sr., Esquire
Jared T. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

Re: *IMO The Estate of Paulina duPont Dean*
Civil Action No. 7430-ML

Dear Counsel:

This action originated as a Petition for Instructions by William Kemble Ketcham ("Kem"),[1] the attorney-in-fact for his elderly, incompetent mother, Paulina du Pont Dean ("Paulina"). The matter was referred to the Master, and the reader is referred to the Master's Report for a full statement of the facts;[2] I will refer only to those facts necessary to my decision.

The Petition for Instructions was Kem's attempt to have this Court bless his denial of a request by his brother, J.S. Dean Ketcham ("Dean"), to be reimbursed

---

[1] I refer to the parties by their preferred first names to prevent confusion. No disrespect is intended.
[2] *IMO The Estate of Paulina duPont Dean*, C.A. No. 7430-ML (Del. Ch. June 30, 2014) (the "Master's Report").

from Paulina's funds for the educational expenses of Dean's children. Under a written power of attorney applicable here, Kem has the power to make gifts on Paulina's behalf "in a manner consistent with [Paulina's] past pattern of giving, in [Kem's] sole and absolute discretion."[3] In response to the Petition for Instructions, Dean contended that the reimbursement he sought was consistent with Paulina's past pattern of giving in paying for her grandchildren's educational expenses. Dean also counterclaimed, alleging that Kem had improperly transferred Paulina's funds for Kem's and Kem's family's benefit and committed other breaches of fiduciary duty.[4] Dean sought a forensic accounting.

The Master found that (1) Kem must account for his tenure as a fiduciary from the date the power of attorney was executed, and (2) payment for Dean's children's educational expenses that were billed directly by an educational institution comported with Paulina's past pattern of giving and thus should be paid from Paulina's estate. Kem has taken exceptions to both of these decisions of the Master.

A. *Standard of Review*

Pursuant to our Supreme Court's directive in *DiGiacobbe v. Sestak*, masters' reports must be reviewed *de novo* by this Court.[5] Because the Master's

---

[3] Pet. for Instructions Ex. A at 3, ¶ 27.
[4] Countercl. ¶¶ 14–17.
[5] 743 A.2d 180, 184 (Del. 1999).

determination did not turn on credibility of the witnesses' testimony, I may resolve the exceptions by reference to the record created before the Master.[6]

B. *Discussion*

### 1. Forensic Accounting

Kem does not contend that he can escape accounting for his use of Paulina's funds as her fiduciary.[7] He contends that the Master erred, however, in finding that the written power of attorney that Paulina entered became effective shortly after it was executed. The facts are these. In the late 1990s, Paulina opened two accounts on which Kem was added as a signatory as a convenience to her.[8] Kem concedes that he used his access to those accounts for Paulina's benefit[9]—and thus acted as her common-law fiduciary—at that time, and had in fact been a signatory on her previous accounts dating back to 1979.[10]

On October 26, 2004, Paulina executed a durable power of attorney. The durable power of attorney was not a springing power; it purported to be effective upon execution and specifically provided that Paulina's disability would not affect

---

[6] *See id.* ("It is possible . . . to conduct a review *de novo* on the record. . . . Only where exceptions raise a *bona fide* issue as to dispositive credibility determinations will a new hearing be inevitable.").

[7] *See, e.g., McMahon v. New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987) ("Fiduciaries, because they hold property or exercise power for another, are required to account in chancery for their stewardship.").

[8] Trial Tr. at 61–62.

[9] Sept. 8, 2014 Oral Arg. Tr. at 6–10; Trial Tr. at 6, 61–63.

[10] Trial Tr. at 6.

operation of the power granted to Kem.[11] It is under this written power of attorney that Dean sought an accounting in the counterclaim. Kem contends that he did not accept the charge as a fiduciary under the written power of attorney until July 2009, when his mother was declared incompetent, and thus is not subject to an accounting for the period between the execution of the power of attorney in 2004 and Kem's purported acceptance in 2009.

A power of attorney becomes effective when accepted by the attorney-in-fact, explicitly or implicitly; it is sufficient evidence of acceptance that the attorney-in-fact exercises the power granted by the power of attorney.[12] In arguing that he did not accept the power of attorney in 2004 because he had already been a signatory on Paulina's accounts, Kem is relying on the fact that he began acting as a fiduciary for Paulina when she put his name on her bank accounts beginning in the late-1990s, if not earlier. Kem argues that after the power of attorney was executed, he continued to act as a fiduciary using his status as a signatory on the

---

[11] Pet. for Instructions Ex. A at 4.

[12] *See* 12 *Del. C.* § 49A-113 ("[A] person accepts appointment as an agent under a personal power of attorney by signing the agent's certification (pursuant to § 49A-105(c) of this title) or by exercising authority or performing duties as an agent or by any other assertion of conduct indicating acceptance."). I note, as the Master did, that Paulina's durable power of attorney was executed prior to the adoption of the Durable Personal Powers of Attorney Act, and thus, Kem would not have signed an agent's certification under § 49A-105(c). Kem conceded, however, that, references to an agent's certification notwithstanding, this is the correct standard for determining whether an appointment has been accepted. *See* Pet'r Opening Br. in Supp. of His Exceptions to the Master's Final Report Dated June 30, 2014 (hereinafter "Pet'r Opening Br.") at 43, n.23.

accounts, and *not* by use of the power granted in the written power of attorney.[13]

He contends that he did not begin using the fiduciary authority granted by the written power of attorney until Paulina was declared incompetent in 2009, and thus need not account for his tenure as attorney-in-fact before that time.

This argument is lawyerly, but unavailing in this court of equity. Regardless of the source of the fiduciary authority Kem was employing, he is still required as a fiduciary to use his principal's property for her benefit only and to act scrupulously in her regard. Kem does not argue that he is altogether immune from an accounting, suggesting instead that the appropriate start date is July 2009, when he purportedly accepted the power of attorney. For the reasons stated above, I affirm the decision of the Master that a forensic accounting must take place commencing with October 26, 2004, the date of the execution of the power of attorney, to review Kem's use of Paulina's funds.[14]

### 2. Dean's Request for Reimbursement of the Costs of his Children's Education

Dean asked Kem to be reimbursed approximately $650,000 for the education of his children between the years of 2001 through 2011.[15] The power of attorney

---

[13] *See, e.g.,* Pet'r Opening Br. at 45.

[14] Because I resolve the case in this manner, I need not reach the issue of whether late-filed evidence on behalf of Kem purportedly demonstrating his proper use of Paulina's funds can be considered here. Of course, Kem is free to point out to the forensic auditor any information he feels is useful for purposes of production of an accurate forensic accounting.

[15] Pet. for Instructions ¶ 9; Answer ¶ 9; Pet. for Instructions Ex. B. Exhibit B to the Petition lists the amount sought as $651.459.72. Dean offered other, lower sums that were calculated based

directs Kem to make gifts on Paulina's behalf "to one or more of [her] issue of whatever degree, including gifts to [Kem], in a manner consistent with [Paulina's] past pattern of giving, in [Kem's] sole and absolute discretion."[16] It is undisputed that it was Paulina's practice to pay the cost of her children's and grandchildren's education. The parties dispute whether, by long delay, Dean waived his right to receive reimbursement, and, if not, what expenses sought are properly paid. The Master, in a well-reasoned report, carefully reviewed Paulina's pattern of giving in resolving this question in favor of Dean.[17]

I am concerned, however, by the rather odd posture of this case. Paulina has a large estate, which Kem and Dean will share equally under her estate plan upon her death. Dean has advocated strongly that Paulina, if competent, would have wished to continue her pattern of giving and reimbursed him the cost of his children's education. Kem disputes vigorously that this is the case, in light of Dean's choice to eschew timely requests for reimbursement; Kem argues that Dean has waived his ability to accept the offer of gift. My concern is that both sides in this litigation, including the fiduciary who is supposedly acting in the interests of Paulina consistent with the terms of the power of attorney, are conflicted. Because of their status as equal beneficiaries under Paulina's will, every dollar paid for the

on different definitions of Paulina's past pattern of giving, for example, (1) all expenses designated by Dean as educational, (2) tuition, room and board, or (3) payments directly to educational institutions. *See* Master's Report at 8; Trial Tr. at 154–56.

[16] Pet. for Instructions Ex. A at 3, ¶ 27.

[17] *See* Master's Report at 18–22.

6

education of Dean's children is an effective 50 cent payment from Kem's pocket. Dean, who is advocating theoretically for the vindication of his mother's wishes, is similarly conflicted.

In this case, and in light of the conceded incapacity of the principal here and the very substantial sum requested, it seems desirable that Paulina's interests be represented by independent counsel *ad litem*. For this reason, that portion of the Master's Report directing payment and reimbursement of Dean's children's expenses is remanded for the appointment of an attorney *ad litem* to investigate and advocate on behalf of Paulina. I leave to the Master's discretion, informed by any requests by the attorney *ad litem*, the determination of to what extent the proceedings need to be reopened for a decision.

C. *Conclusion*

Kem's exception regarding the forensic accounting is denied. With respect to the portion of the Master's Report directing reimbursement to Dean of his children's educational expenses, the matter is remanded for further proceedings. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

7