# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

Driven Intermediate Holdings, Inc., *a Virginia corporation*,

    Plaintiff /
    Counterclaim-Defendant,

    v.

Oswaldo Jimenez, *in his capacity as Sellers' Representative on behalf of all Sellers under the Stock Purchase and Exchange Agreement dated as of September 23, 2021*,

    Defendant /
    Counterclaim-Plaintiff.

C.A. No. 2024-0150-LWW

## MEMORANDUM OPINION

Date Submitted: December 15, 2025
Date Decided: March 31, 2026

Jaclyn C. Levy & Charles P. Wood, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Michael P. Conway & Shea Flanagan Spreyer, JONES DAY, Chicago, IL; *Counsel for Plaintiff/Counterclaim-Defendant Driven Intermediate Holdings, Inc.*

F. Troupe Mickler IV, ASHBY & GEDDES, P.A., Wilmington, Delaware; John B. Horgan, ELLENOFF GROSSMAN & SCHOLE LLP, New York, NY; *Counsel for Defendant/Counterclaim-Plaintiff Oswaldo Jimenez, in His Capacity as Sellers' Representative*

**WILL, Vice Chancellor**

This action arises from a post-closing true-up dispute following the $103 million sale of an e-discovery company. The buyer and the sellers' representative have cross-moved for summary judgment, asking the court to finalize the math on their working capital adjustments after an independent accountant resolved three accounting disagreements.

The buyer attempts to anchor jurisdiction in this court by bringing a claim to confirm the accountant's calculation as an arbitral award under the Delaware Uniform Arbitration Act and by seeking specific performance to compel the release of escrowed funds and the balance of the final closing payment. Neither is sufficient. The independent accountant acted as an expert rather than an arbitrator, which strips this court of statutory jurisdiction. And the governing escrow agreement mandates the release of funds upon a final declaratory order from any court of competent jurisdiction, providing the buyer with a complete and adequate remedy at law for its breach of contract claims.

Because the court lacks subject matter jurisdiction over this legal dispute for money damages, the action is dismissed *sua sponte* without prejudice, with leave to transfer to the Superior Court.

## I. BACKGROUND

Unless otherwise noted, the background is drawn from the undisputed facts in the pleadings and documentary exhibits submitted by the parties.[1]

### A. The Stock Purchase Exchange Agreement

Plaintiff Driven Intermediate Holdings, Inc. is a Virginia corporation and a subsidiary of Innovative Discovery Holdings, LLC.[2] Innovative Discovery Holdings is an e-discovery and litigation support provider and a portfolio company of Silver Oak Services Partners, LLC.[3]

On September 23, 2021, Driven entered into a Stock Purchase and Exchange Agreement (the "SPEA") to acquire all issued and outstanding stock of Driven Holdings Corporation, a Virginia corporation (the "Company") from its stockholders (the "Sellers") in exchange for $103 million.[4]

---

[1] *See* Verified Compl. (Dkt. 1) ("Compl."); Def.'s Answer to Verified Compl. and Verified Countercl. (Dkt. 7) ("Answer"); *see also* Pl.'s Answer to Verified Countercl. (Dkt. 11) ("Countercl. Reply").

Exhibits to the Transmittal Affidavit of F. Troupe Mickler IV, Esq. in Support of Defendant's Opening Brief in Support of His Motion for Summary Judgment (Dkt. 45) are cited as "Def.'s Ex. _." Exhibits to the Affidavit of Daniel B. Wellman, Esq. in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (Dkt. 48) are cited as "Pl.'s Ex. _."

[2] Compl. ¶ 15; Answer ¶ 15.

[3] Compl. ¶ 15; Answer ¶ 15.

[4] Compl. ¶¶ 2, 21; Answer ¶¶ 2, 21; Def.'s Ex. 1 (Stock Purchase and Exchange Agreement) ("SPEA") § 2.2.

Defendant Oswaldo Jimenez (the "Sellers' Representative") was the President and Chief Executive Officer of the Company before closing.[5]  Under the SPEA, he had authority to "take any and all actions in the name and on behalf of [the] Seller[s]" to consummate the transaction.[6]  The transaction closed the same day the SPEA was signed.

### B.     The Purchase Price Adjustment Process

Section 2.3 of the SPEA governs post-closing adjustments to the purchase price.[7]  No later than 90 days following the closing, Driven was required to deliver to the Sellers' Representative a consolidated balance sheet and a "Closing Statement" detailing proposed calculations of the closing payment.[8]

Upon receipt, the Sellers' Representative could either accept the Closing Statement or deliver a notice of disagreement within 30 days.[9]  If a timely notice of disagreement was delivered, the parties were required to "use their reasonable efforts" to reach agreement on disputed items.[10]  If they could not reach agreement, they could submit any disputed issues to an "independent accountan[t] of nationally

---

[5] Compl. ¶ 16; Answer ¶ 16.

[6] SPEA § 2.8(a).

[7] *Id.* § 2.3.

[8] *Id.* § 2.3(b).

[9] *Id.* § 2.3(c).

[10] *Id.* § 2.3(d).

recognized standing" (the "Independent Accountant").[11]   The Independent Accountant's determinations would be "final and binding."[12]

If a timely notice of disagreement was delivered, the "Final Closing Statement" would consist of Driven's initial Closing Statement, adjusted by any changes "jointly agreed in writing" by the parties and "the Independent Accountants' calculation" for any remaining disputed items.[13]

The parties set aside in escrow $1,500,000 from the purchase price for any post-closing adjustments (the "Adjustment Escrow Amount").[14]

## C.     The Post-Closing Dispute

On December 21, 2021, Driven delivered a Closing Statement to the Sellers' Representative, calculating an adjustment of $2,723,263.64 due to Driven.[15]   The Sellers timely delivered a notice of disagreement in January 2022.[16]

After months of negotiations, the parties resolved certain items but remained at an impasse on three specific accounting matters.[17]   They agreed to engage a partner from Deloitte Financial Advisory Services LLP ("Deloitte") as the

---

[11] *Id.*

[12] *Id.*

[13] *Id.* § 2.3(e).

[14] *Id.* § 2.6(a).

[15] Compl. ¶¶ 39, 41; Answer ¶¶ 39, 41; Def.'s Ex. 3 Schedule A.

[16] Def.'s Ex. 4 (Notice of Disagreement).

[17] Pl.'s Ex. 10 (May 25, 2022 email re: "Closing Statement Disputed Items Calculation").

Independent Accountant to resolve the disputed issues.[18] On February 24, 2023, the Independent Accountant issued her determination (the "Award").[19]

The parties disagreed over the baseline calculations to which the Independent Accountant's determinations should be applied. Driven argued that it was owed over $1.5 million and demanded the release of the Adjustment Escrow Amount.[20] The Sellers disputed Driven's baseline math, argued that they were owed a balance, and demanded that the escrowed funds be released to them instead.[21] An impasse was reached, and the escrowed funds remain undistributed.

### D. This Litigation

On February 19, 2024, Driven filed this action against the Sellers' Representative.[22] Its Verified Complaint (the "Complaint") advanced five claims: for confirmation of the Award (Count I); breach of the SPEA (Count II); a declaratory judgment regarding the Adjustment Escrow Amount and the balance of the final closing payment (Count III); specific performance compelling the Sellers

---

[18] *Id.*; Pl.'s Ex. 11 (response to May 25, 2022 email); Def.'s Ex. 9 (Deloitte letter of engagement) 1-2.

[19] Pl.'s Ex. 16 (Award) 2-7.

[20] Pl.'s Ex. 17 (Final Closing Statement).

[21] Pl.'s Ex. 18 (Post-Closing Dispute Letter) 1, 3.

[22] Dkt. 1.

to release and pay those amounts (Count IV); and breach of the implied covenant of good faith and fair dealing (Count V).[23]

On April 1, 2024, the Sellers' Representative answered the Complaint, raising several affirmative defenses.[24] He also filed a declaratory judgment counterclaim (the "Counterclaim") seeking to enforce a footnote in the Award about the parties' purported agreement to certain adjustments.[25] Driven replied to the Counterclaim on May 6.[26]

On June 10, 2025, the Sellers' Representative moved for summary judgment.[27] Driven filed an answering brief and cross-moved for summary judgment on July 17.[28] Briefing was completed on September 26.[29] Oral argument on the cross-motions was presented on December 15, and the matter was taken under advisement.[30]

---

[23] Compl. ¶¶ 76-150.

[24] Answer 53-55.

[25] *Id.* at 66.

[26] Countercl. Reply.

[27] Def.'s Opening Br. in Supp. of Mot. for Summ. J. (Dkt. 45) ("Def.'s Opening Br.").

[28] Pl.'s Combined Opening Br. in Supp. of its Cross-Mot. for Summ. J. and Answering Br. in Opp'n to Def.'s Mot. for Summ. J. (Dkt. 48) ("Pl.'s Opening & Answering Br.").

[29] Def.'s Reply Br. in Further Supp. of Mot. for Summ. J. and Answering Br. in Opp'n to Pl.'s Cross-Mot. for Summ. J. (Dkt. 54) ("Def.'s Answering & Reply Br."); Pl.'s Reply Br. in Supp. of Cross-Mot. for Summ. J. (Dkt. 59).

[30] Dkt. 63.

## II.    ANALYSIS

Driven moves for summary judgment on Counts I and II of the Complaint and on the Sellers' Representative's Counterclaim.[31]   In the alternative, it moves for summary judgment on Counts III and IV.[32]   The Sellers' Representative seeks summary judgment on all five counts of the Complaint and on his Counterclaim.[33] Before I can reach the merits of those motions, however, I must resolve the threshold issue of whether this court has subject matter jurisdiction.

The Court of Chancery is a court of limited jurisdiction.[34]   Absent a statutory grant, this court possesses subject matter jurisdiction only where a plaintiff states an equitable claim or requires equitable relief.[35]   "The Court has a duty to determine whether it has subject matter jurisdiction over a plaintiff's claims and can raise the issue *sua sponte*."[36]

---

[31] Pl.'s Opening & Answering Br. 46.

[32] *Id.* at 46-47.

[33] Def.'s Opening Br. 5.

[34] *See Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019) ("The Court of Chancery is proudly a court of limited jurisdiction."), *aff'd*, 249 A.3d 375 (Del. 2021) (TABLE).

[35] *See Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citing 10 *Del. C.* §§ 341-42).

[36] *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *3 (Del. Ch. July 8, 2021) (citing Ct. Ch. R. 12(h)(3) and various cases).

Driven cites two jurisdictional bases. Through Count I of its Complaint, it attempts to invoke statutory jurisdiction under the Delaware Uniform Arbitration Act by framing the Independent Accountant's determinations as an arbitral award.[37] And through Count IV, it seeks to invoke equitable jurisdiction by seeking specific performance to compel the Sellers to release the escrowed funds and the remainder of the final closing payment it purports to be owed.[38]

Neither Count I nor Count IV supports subject matter jurisdiction in this court. First, the Independent Accountant acted as an expert rather than an arbitrator, defeating the statutory claim. Second, an adequate remedy at law exists for the contract claims, negating the need for equitable relief. Because this court lacks subject matter jurisdiction over what is fundamentally a legal dispute for money damages, the action is dismissed with leave to transfer to the Superior Court.

## A.     Whether Deloitte Was an Expert or Arbitrator

To determine whether statutory jurisdiction exists under the Delaware Uniform Arbitration Act, I must first ascertain whether the parties agreed to an arbitration or an expert determination. The proper interpretation of a contract is a

---

[37] Compl. ¶¶ 87-88.

[38] *Id.* ¶¶ 120-34.

8

question of law.[39]  In the absence of ambiguity, the court must interpret contract terms according to their plain, ordinary meaning.[40]

The threshold issue is whether the Independent Accountant acted as an arbitrator—as the Sellers' Representative contends—or an accounting expert—as Driven contends.[41]  This determination turns on "the type and scope of authority that is being delegated by the parties to the decision maker."[42]  Unlike an arbitrator who has broad authority to decide all legal and factual issues necessary to resolve a controversy and award a remedy, an expert has limited authority to decide "a specific factual dispute concerning a matter within [her] special expertise[.]"[43]

Section 2.3(d) of the SPEA states, in relevant part:

> If any remaining issues in dispute are submitted . . . each of Purchaser and the Sellers' Representative ***shall be afforded an opportunity to present to the Independent Accountants*** . . . such material relating to the determination of the matters in dispute and to discuss such matters with the Independent Accountants ***at***

---

[39] *See Tetragon Fin. Gp. Ltd. v. Ripple Labs Inc.*, 2021 WL 1053835, at *3 (Del. Ch. Mar. 19, 2021) (citing *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991)).

[40] *See Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012); *see also Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins.*, 616 A.2d 1192, 1196 (Del. 1992) ("[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.").

[41] Pl.'s Opening & Answering Br. 37-42; Def.'s Opening Br. 14-19.

[42] *Pazos v. AdaptHealth LLC*, 322 A.3d 492, 501 (Del. Super. 2024), *aff'd*, 340 A.3d 543 (Del. 2025); *ArchKey Intermediate Hldgs. Inc. v. Mona*, 302 A.3d 975, 993 (Del. Ch. 2023) ("The test turns primarily on the degree of authority delegated to the decision-maker.").

[43] *Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 618 (Del. 2023) (quoting *Penton Bus. Media Hldgs., LLC v. Informa PLC*, 252 A.3d 445, 464 (Del. Ch. 2018)).

9

*such hearing* . . . . The Independent Accountants shall act as an arbitrator *to calculate the components of the Closing Statement and shall be instructed that its calculation* must be made in accordance with the standards and definitions in this Agreement. . . . . [They] shall *make a determination with respect to any unresolved Disagreement* only in a manner consistent with this Section 2.3 . . . . *All such determinations shall be final and binding* upon the parties and may be entered and enforced in any court having jurisdiction.[44]

The narrow authority granted to the Independent Accountant by Section 2.3(d) is dispositive. The Independent Accountant can only "calculate the components of the Closing Statement" and "make a determination with respect to any unresolved [d]isagreement" submitted by the parties—here, three specific accounting issues.[45] The Independent Accountant herself recognized this limitation and declined to analyze the parties' broader pre-submission agreements.[46]

The Sellers' Representative argues that the language making the determination "final and binding" renders the Independent Accountant an

---

[44] SPEA § 2.3(d) (emphasis added).

[45] *Id.*; *see Penton*, 252 A.3d at 466 (noting an expert generally has "a limited role: to apply her industry-specific knowledge to answer a technical, industry-specific question that [is] properly teed up for the Referee through the parties' own Review Process" (citation omitted)).

[46] Pl.'s Ex. 16 (Award) 9 ("Purchaser and Seller *presented to me three disputed items*, totaling $2,669,654 for my final and binding determination as the Arbitrator; in accordance with Section 2.3 of the Agreement, *all other items and amounts have been agreed by the Parties* and are thus conclusive and binding on the Parties." (emphasis added)). The engagement letter confirms this narrow grant of power, stating that the Independent Accountant would "consider only those specific items of disagreement identified by the Sellers' Representative in its Notice of Disagreement." Def.'s Ex. 9 at 4.

arbitrator.[47]  But Section 2.3(d) bears the hallmarks of a "run-of-the-mill Accountant True-Up Mechanism," a "beefed-up expert determination" commonly used in purchase agreements governing the sale of private companies.[48]  It follows the typical steps of such a provision—including a dispute resolution process for a post-closing statement, submissions from parties, and a "final and binding" determination.[49]  The use of the word "arbitrator" in Section 2.3(d) is not controlling, particularly when there is no reference to an arbitral organization or arbitral rules within the provision itself.[50]

The Independent Accountant did not have the broad legal authority of an arbitrator.  Thus, she could not make any binding findings beyond the rulings on the three disputed items submitted to her.  Because the process was an expert

---

[47] Def.'s Answering & Reply Br. 17-18.

[48] *ArchKey*, 302 A.3d at 991-92, 995.

[49] *Id.* (listing the standardized steps for this provision, including "tender[ing] initial and rebuttal submissions with supporting documentation" and issuing a "final and binding" determination).  The parties here provided such submissions to the Independent Accountant on the three disputed issues.  *See, e.g.*, Def.'s Ex. 12 (Driven's rebuttal to Sellers' arbitration brief); Def.'s Ex. 15 (Sellers' responses to Independent Accountant).

[50] *See ArchKey*, 302 A.3d at 982 ("The fact that the drafters used the word 'arbitrator' is not dispositive.  The remainder of the language and structure of the provision establishes an intent to provide for an expert determination, not an arbitration.  The provision as a whole is what controls.").

determination, the Delaware Uniform Arbitration Act does not apply, and Count I fails as a matter of law.[51]

## B. Whether the Court Has Subject Matter Jurisdiction

With statutory jurisdiction under the Delaware Uniform Arbitration Act defeated, this court's subject matter jurisdiction depends on Driven's invocation of equity.[52] The remaining counts in the Complaint and the Counterclaim are quintessential legal claims.[53] Driven alleges breach of contract, breach of the implied covenant of good faith and fair dealing, and seeks a declaratory judgment regarding the final closing payment. The Sellers' Representative also seeks a

---

[51] Compl. ¶¶ 76-88 (seeking confirmation of the Award under the Delaware Uniform Arbitration Act); *see* 10 *Del. C.* § 5713; *see also Penton*, 252 A.3d at 458.

[52] To the extent Driven might attempt to locate statutory jurisdiction in 8 *Del. C.* § 111, which grants this court jurisdiction to interpret certain agreements regarding the sale of stock, that statute is inapplicable here. Section 111 of the Delaware General Corporation Law applies to Delaware corporations, and the Company whose stock was purchased under the SPEA is a Virginia corporation. *See Elavon, Inc. v. Elec. Transaction Sys. Corp.*, 2022 WL 667075, at *1 n.1 (Del. Ch. Mar. 7, 2022) (noting that 8 *Del. C.* § 111 does not apply to a purchase agreement where the corporations at issue are not Delaware corporations).

[53] *See Candlewood Timber Gp. LLC v. Pan Am. Energy LLC*, 2003 WL 22417235, at *2 (Del. Ch. Oct. 22, 2003) (holding that the Court of Chancery lacked subject matter jurisdiction over a breach of contract claim seeking money damages), *aff'd in part, rev'd in part on other grounds*, 859 A.2d 989 (Del. 2004).

declaratory judgment. These are causes of action remediable by money damages at law.[54]

To establish equitable jurisdiction, Driven relies exclusively on Count IV, which is brought in the alternative and seeks an order of specific performance compelling the Sellers' Representative to execute joint written instructions directing the escrow agent to release the $1.5 million Adjustment Escrow Amount and to pay the balance of the closing payment Driven is allegedly owed.[55] But the mere pleading of an equitable remedy is insufficient to confer jurisdiction where a complete and adequate remedy at law exists.[56] An adequate remedy at law "must be available as a matter of right, be full, fair and complete, and be as practical to the ends of justice and to prompt administration as the remedy in equity."[57]

---

[54] *E.g.*, *Prestancia Mgmt. Gp., Inc. v. Va. Heritage Found., II LLC*, 2005 WL 1364616, at *4 (Del. Ch. May 27, 2005) ("Damages for breach of a contract . . . ar[e] available at law.").

[55] *See* Compl. ¶¶ 120-34.

[56] *See McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987) ("Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will itself excuse the court . . . from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate. If a realistic evaluation leads to the conclusion that an adequate legal remedy is available [to] this court, in conformity with the command of [10 *Del. C.* § 342] [this court] will not accept jurisdiction over the matter."); *Intel Corp. v. Fortress Inv. Gp., LLC*, 2021 WL 4470091, at *5 (Del. Ch. Sept. 30, 2021) ("[W]hen there exists an adequate and sufficient remedy at law, a claim cannot be converted to a cause in equity by the mere invocation of a formulaic prayer for traditional equitable relief." (quoting Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 2.03[a], at 2-3 (2021))).

[57] *Clark v. Teeven Hldg. Co.*, 625 A.2d 869, 881 (Del. Ch. 1992).

13

Driven possesses such a remedy. The escrow agreement governing the Adjustment Escrow Amount provides that the escrow agent must disburse the funds upon receipt of either a "Joint Certificate" executed by the parties or a "Court Order."[58] A "Court Order" is defined as "a certified copy of a final, non-appealable order of a court of competent jurisdiction . . . setting forth the appropriate amount of such funds to be disbursed . . . ."[59]

A declaratory judgment from a court of law calculating the final closing payment would be such a Court Order. It would legally bind the escrow agent to release the funds, making the requested equitable relief—an order of specific performance—superfluous. A post-closing true-up dispute cannot be transformed into an equitable one simply by requesting an injunction to release escrowed funds when the agreement honors a final judicial order.[60] That holds true even when the request includes a dollar amount beyond that held in escrow—which is itself classic legal relief.[61]

---

[58] Compl. Ex. B (Escrow Agreement) § 3.

[59] *Id.*

[60] *See ISS Facility Servs., Inc. v. JanCo FS 2, LLC*, 2023 WL 4096014, at *2 (Del. Ch. June 20, 2023); *Buescher v. Landsea Homes Corp.*, 2023 WL 5994144, at *1-2 (Del. Ch. Sept. 15, 2023); *Elavon, Inc.*, 2022 WL 667075, at *3.

[61] *See Elavon*, 2022 WL 667075, at *3 (dismissing a suit for lack of subject matter jurisdiction when "the damages sought exceed the value of the Escrow Fund"). The parties' agreement that a breach of the escrow agreement would constitute "irreparable damage" for which they would "be entitled to . . . specific performance" is not dispositive. Compl. Ex. B (Escrow Agreement) § 22(b); *see 26 Cap. Acq. Corp. v. Tiger Resort Asia*

14

Because the Superior Court can issue relief that fully resolves the escrow release and the underlying money damages, Driven has a complete and adequate remedy at law, and equitable jurisdiction is lacking.

Dismissing this suit for lack of subject matter jurisdiction also serves the interests of judicial efficiency. There is currently a related action pending between these parties before the Superior Court's Complex Commercial Litigation Division.[62] That action arises from the same factual predicate and concerns alleged fraud and breaches of representations and warranties under the SPEA.[63] Dismissing this action will allow the parties to consolidate their disputes before a single court.

## III. CONCLUSION

For the foregoing reasons, the Complaint and the Counterclaim are dismissed without prejudice for lack of subject matter jurisdiction, with leave to transfer to the Superior Court pursuant to 10 *Del. C.* § 1902. Consequently, the cross-motions for summary judgment are denied as moot.

---

*Ltd.*, 309 A.3d 434, 465 (Del. Ch. 2023) (noting that "a court is not required to enforce a specific performance provision").

[62] *See Driven Intermediate Hldgs., Inc. v. Jimenez et al.*, C.A. No. N24C-09-056 PAW CCLD (Del. Super.).

[63] *See Compl.*, C.A. No. N24C-09-056 PAW CCLD (Del. Super. Sep. 12, 2024) ¶¶ 120-34.