**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: May 18, 2017
Date Decided: July 7, 2017

Larry R. Wood, Jr., Esquire
Adam V. Orlacchio, Esquire
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801

John P. DiTomo, Esquire
Alexandra M. Cumings, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
Wilmington, DE 19899

Michael Busenkell, Esquire
Margaret F. England, Esquire
Gellert Scali Busenkell & Brown, LLC
1201 North Orange Street, Suite 300
Wilmington, DE 19801

Blake Rohrbacher, Esquire
Susan M. Hannigan, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

RE:   ***Warren David Yu v. GSM Nation, LLC et al.***,
      Civil Action No. 12293-VCMR

Dear Counsel:

This letter opinion resolves Defendants' motion to dismiss. Defendants move

to dismiss for lack of subject matter jurisdiction because, in their view, the complaint

merely seeks to collect a debt, and damages provide an adequate remedy at law.

They also move to dismiss for failure to state a claim, and Defendant Ahmed Khattak

moves to dismiss for lack of personal jurisdiction. Because, when viewed

holistically, the complaint does not assert any equitable claims and an adequate

remedy exists at law, the motion to dismiss for lack of subject matter jurisdiction is granted.

## I.     BACKGROUND

The facts outlined in this letter opinion derive from Plaintiff's Verified Amended Complaint (the "Complaint").

### A.     Facts

Defendant GSM Nation, LLC ("GSM") is a Delaware limited liability company in the mobile phone retail and wholesale business. Defendant Ahmed Khattak is the chief executive officer, co-founder, and manager of GSM and owns 85% of the GSM units. Junaid Shams is the other co-founder of GSM. Shams was acquainted with Plaintiff David Warren Yu through medical studies at the George Washington University before Yu loaned money to GSM in the series of transactions that gave rise to this case.

Defendant US Mobile Inc. was a Delaware corporation that was merged with and into Defendant US Mobile LLC, a Delaware limited liability company, on July 1, 2015. Khattak also allegedly controls US Mobile LLC.

Khattak and Shams founded GSM in 2010, and since then, the company has allegedly experienced "tremendous growth."[1]  In 2011, GSM was featured in Forbes magazine and listed among Businessweek's 25 most promising companies.

In mid-2012, GSM sought to expand further by developing a mobile virtual network operator ("MVNO"), which would allow GSM to provide cellular service plans to its customers.  But GSM was cash strapped at the time.  Shams, at Khattak's request, approached Yu for the purpose of soliciting loans to GSM, and Khattak allegedly represented to Yu that GSM needed capital to launch an MVNO.  In October 2012, GSM provided Yu with a prospectus that included the plan to form an MVNO as a division of GSM.

From February 2013 through September 2014, Yu loaned $3,500,000 to GSM under a series of 16 separate loan agreements (the "Loan Agreements") bearing 12% simple interest, payable monthly.  Yu was entitled to call the loans at any time with 60 days' notice.

GSM paid Yu the required monthly interest payments and employed personnel to develop MVNO capabilities.  The Complaint also alleges that Khattak paid himself "a draw" of $10,000 to $15,000 per month from GSM while Yu was

---

[1]      Compl. ¶ 14.

making loans to the company. Additionally, Khattak used $5,000 from GSM each month to cover his personal living expenses. And the Complaint asserts that Khattak "tried to buy a luxury car using a cashier's check from GSM,"[2] but it does not allege that Khattak was successful in buying the car or when he made the attempt.

In April 2013, GSM released an MVNO business plan, which stated in part that the MVNO GSM was developing would be a part of GSM. But Yu alleges that instead of completing the MVNO development process within GSM, Khattak applied to the Federal Communications Commission (the "FCC") on behalf of US Mobile LLC for permissions related to becoming an MVNO. US Mobile LLC sought the right from the FCC to provide global resale services between the United States and points abroad. Yu alleges that, as a result, US Mobile LLC, not GSM, became an MVNO. Yu also asserts on information and belief that Khattak caused GSM to purchase cellular phones and transfer them to US Mobile LLC for no consideration, but the Complaint does not allege when this transfer occurred.

GSM paid Yu the required interest payments under the Loan Agreements until January 2016 when GSM's interest check was returned for insufficient funds. GSM's February 2016 interest check also was returned for insufficient funds. On

---

[2]    *Id.* ¶ 47.

February 17, 2016, Yu made a demand for full payment of the debt pursuant to the Loan Agreements. But GSM allegedly responded that "given the current state of the business, GSM is not able to repay or service the loan."[3] GSM provided Yu with a GSM income statement dated December 4, 2015, which showed a net loss of $812,257, and a GSM balance sheet dated January 31, 2016, which showed total assets of $112,730.27 and total liabilities of $4,403,083.35.

### B.    This Litigation

On May 3, 2016, Yu filed the original complaint in this action, and on July 26, 2016, he filed the Complaint at issue in this motion. Count I of the Complaint alleges a breach of contract claim against GSM for failure to repay the loans. Count II is a claim for fraudulent inducement against GSM and Khattak in connection with the Loan Agreements because GSM and Khattak allegedly represented that an MVNO would be developed within GSM. Count III alleges equitable fraud against GSM and Khattak for the same conduct. Count IV is a fraudulent transfer claim against GSM, Khattak, US Mobile LLC, and US Mobile Inc. Count V alleges unjust enrichment against GSM, Khattak, US Mobile LLC, and US Mobile Inc., and count VI seeks to pierce the corporate veils of GSM, US Mobile LLC, and US Mobile Inc.

---

[3]     *Id.* ¶ 80.

under an alter ego theory of liability against Khattak. Further, Yu's prayer for relief requests "equitable rescission" of the loan agreements, "reformation," a "constructive trust" voiding the transfers from GSM to US Mobile LLC, and an "equitable accounting."

On August 9, 2016, Defendants GSM, US Mobile Inc., and US Mobile LLC moved to dismiss the Complaint for lack of subject matter jurisdiction. Defendant Khattak moved to dismiss for lack of personal jurisdiction, and all Defendants moved to dismiss for failure to state a claim. Yu asserts that his claims for equitable fraud and unjust enrichment are equitable claims. And he argues that his claims for fraudulent transfer and fraudulent inducement seek equitable remedies such that the Court of Chancery has subject matter jurisdiction. Yu contends that the Court has jurisdiction over his breach of contract claim pursuant to the "clean-up" doctrine.[4] The Court heard oral argument on the motions on May 18, 2017. This opinion resolves the pending motions to dismiss.

## II. ANALYSIS

GSM, US Mobile Inc., and US Mobile LLC move to dismiss the Complaint for lack of subject matter jurisdiction. They argue that the Complaint merely uses

---

[4] Pl.'s Answering Br. to GSM Mot. to Dismiss 13 n.1.

traditionally equitable words but does not actually bring equitable claims or seek equitable remedies. The Court of Chancery will grant a Rule 12(b)(1) motion to dismiss "if it appears from the record that the Court does not have jurisdiction over the claim."[5] The Court of Chancery is a court of limited jurisdiction. Section 342 of Title 10 of the Delaware Code states that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[6] This Court acquires subject matter jurisdiction over a case "in only three ways: (1) the invocation of an equitable right; (2) the request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction."[7]

---

[5]    *Medek v. Medek*, 2008 WL 4261017, at *3 (Del. Ch. Sept. 10, 2008).

[6]    10 *Del. C.* § 342.

[7]    *Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at *1 (Del. Ch. Oct. 3, 2008) (quoting *Medek v. Medek*, 2008 WL 4261017, at *3 (Del. Ch. Sept. 10, 2008)) (internal quotation marks omitted).

"When a party challenges this Court's subject matter jurisdiction over a particular case, the '[C]ourt must review the allegations of the complaint as a whole to determine the true nature of the claim.'"[8] As former Chancellor Allen observed:

> Chancery jurisdiction is not conferred by the incantation of magic words. Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will excuse the court . . . from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate. If a realistic evaluation leads to the conclusion that an adequate remedy is available, this court, in conformity with the command of Section 342 of Title 10 of the Delaware Code, will not accept jurisdiction over the matter.[9]

"[E]quity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame'"[10] to equity jurisdiction.

---

[8]     *Hillsboro Energy*, 2008 WL 4561227, at \*1 (quoting *Christiana Town Ctr., LLC v. New Castle Ctr.*, 2003 WL 21314499, at \*3 (Del. Ch. June 6, 2003)).

[9]     *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987).

[10]     *Int'l Bus. Machines Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

### A.    Alter Ego Liability

Count VI of Yu's Complaint asserts that Khattak is subject to personal liability under an alter ego or veil piercing theory, which is an equitable claim.[11]  Yu alleges that GSM, US Mobile Inc., and US Mobile LLC are alter egos of Khattak because Khattak paid himself compensation from GSM both in cash and through other fringe benefits such as the rent on an apartment.  The Complaint also alleges on information and belief that GSM and US Mobile LLC were undercapitalized "[a]t the time of GSM's transfer of resources and assets to US Mobile, if not before."[12]  And Yu asserts that US Mobile LLC was formed for the purpose of fraudulently transferring assets from GSM to an entity that did not owe a debt to Yu.

"Persuading a Delaware court to disregard the corporate entity is a difficult task."[13]  "In order to state a cognizable claim to pierce the corporate veil of [a corporation], plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control of the

---

[11]    *Sonne v. Sacks*, 314 A.2d 194, 197 (Del. 1973) ("[P]iercing the corporate veil may be done only in the Court of Chancery . . . .").

[12]    Compl. ¶¶ 141-42.

[13]    *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (quoting *Harco Nat. Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)) (internal quotation marks omitted).

[corporation]."[14] "Piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.' Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."[15]

Yu does not allege that Khattak commingled funds with GSM or US Mobile LLC or that those entities failed to observe other corporate formalities such that they are sham entities. In contrast, Yu alleges that GSM, not Khattak, conducted a successful mobile phone sales business for at least five years.[16] GSM was named as one of Businessweek's 25 most promising businesses. And GSM serviced Yu's loan in compliance with the Loan Agreements from February 2013 through December 2015 before it defaulted. Khattak did not even approach Yu to solicit his investment in GSM. Rather, Shams, the other co-founder of GSM, was Yu's initial point of contact.[17] GSM allegedly is insolvent now, but the Complaint includes no non-conclusory allegations that it was inadequately capitalized from February 2013 when

---

[14]     *Id.* at 1183-84.

[15]     *Id.* at 1184 (quoting *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996)).

[16]     *E.g.*, Compl. ¶¶ 12-13.

[17]     *Id.* ¶ 17.

Yu provided the first loan to January 2016 when GSM first failed to service the loan. US Mobile LLC also allegedly conducts a legitimate operating business and has at least applied for MVNO-related permission from the FCC. And the Complaint does not allege any specific transfer of assets from GSM to US Mobile LLC that could support the inference that US Mobile LLC was formed for a fraudulent purpose.[18] The alter ego liability claim is merely an attempt to bootstrap a legal claim into the Court of Chancery's jurisdiction through the "invocation of familiar chancery terms."[19] That attempt cannot succeed.

## B. Equitable Fraud

Count III of the Complaint alleges a claim for equitable fraud, which Yu asserts forms a sufficient basis for this Court's equitable jurisdiction. GSM moves to dismiss count III for lack of subject matter jurisdiction and argues that the equitable fraud claim was pled as a pretext to gain access to the Court of Chancery. The Court of Chancery has "exclusive, rather than concurrent, jurisdiction over"

---

[18]     The Complaint merely asserts on information and belief that Khattak caused GSM to purchase cellular phones and transfer them to US Mobile LLC for no consideration, but the Complaint does not provide any details regarding the alleged transfer.

[19]     *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987).

actions for "equitable fraud."[20]  As such, a properly pled claim for "equitable fraud must be pursued exclusively in the Court of Chancery."[21]  Equitable fraud requires the same elements as common law fraud, except scienter.[22]  Instead, a special relationship must exist between the parties "such as some form of fiduciary relationship or other similar circumstances, which common law fraud does not require."[23]

Aside from the title "equitable fraud," the Complaint alleges no basis for an equitable fraud claim.  No facts in the Complaint suggest that GSM or Khattak owed a fiduciary or similar duty to Yu.  Absent any facts regarding an essential element of a claim for equitable fraud, the equitable fraud claim cannot be a basis for invoking this Court's jurisdiction.[24]

---

[20]  *Mark Fox Gp., Inc. v. E.I. duPont de Nemours & Co.*, 2003 WL 21524886, at *5 (Del. Ch. July 2, 2003).  Equitable fraud is also referred to as "negligent or innocent misrepresentation."  *Id.* at *5 n.15.

[21]  *Id.* at *5.

[22]  *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *13 (Del. Ch. Dec. 22, 2010).

[23]  *Id.*

[24]  *See Mark Fox Gp.*, 2003 WL 21524886, at *6 (dismissing an equitable fraud claim for lack of subject matter jurisdiction without reaching the pending Rule 12(b)(6) motion to dismiss).

### C.     Unjust Enrichment

Yu also brings an unjust enrichment claim in count V of the Complaint and argues that such a claim is an equitable claim sufficient to invoke the jurisdiction of the Court of Chancery.  But the Delaware Supreme Court held in *Crosse v. BCBSD, Inc.* that when unjust enrichment is "an off-the-contract theory of recovery that accompanies . . . breach of contract allegations," the claim is "legal, not equitable."[25] Yu primarily seeks to collect a debt that is governed by the Loan Agreements through his unjust enrichment claim.  Pleading such a claim as "unjust enrichment" is not sufficient to invoke equity jurisdiction where unjust enrichment is an alternative to breach of contract.  Count V, thus, does not allege an equitable claim.

### D.     Equitable Remedies

In addition to nominally pleading equitable claims, Yu attempts to invoke equity jurisdiction by seeking equitable remedies.  The Complaint requests a constructive trust, rescission, reformation, and an equitable accounting.  But the primary remedy Yu seeks—and the remedy that will make him whole—is money damages in the amount owed on his debt.  Assuming Yu succeeds on the merits of his claims, he can obtain that remedy against GSM under the Loan Agreements or

---

[25]     *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 496-97 (Del. 2003).

against US Mobile LLC as the transferee of a fraudulent transfer.[26]  Neither the Complaint nor the briefing suggests any reason why a Superior Court judgment against GSM and US Mobile LLC would not provide a full, fair, and complete remedy to Yu.

While the Complaint alleges that GSM is insolvent, it does not allege that US Mobile LLC is unable to pay a judgment.  And it does not allege that specific assets were transferred to US Mobile LLC such that an avoidance of the transfer would be a better remedy.  Instead, the Complaint alleges that Yu loaned cash to GSM, which GSM used to fund the development of MVNO capabilities.  Subsequently, US Mobile LLC rather than GSM applied to the FCC for MVNO-related permissions.  The Complaint also alleges that on information and belief, GSM transferred cellular phones to US Mobile LLC for no consideration.  But the Complaint does not allege when that transfer occurred or how many phones were transferred.  Those allegations do not provide a basis for this Court to avoid a transfer of assets or grant a constructive trust.  Rather, they suggest that a monetary judgment is Yu's best

---

[26]    *See* 6 *Del. C.* § 1307(a)(2) ("In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in § 1308 of this title, may obtain . . . [a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law . . . .").

remedy to collect the debt he is owed. While the Complaint includes the "magic words" of certain equitable remedies in an attempt to invoke equity jurisdiction, the Superior Court can grant a full, fair, and complete remedy. Thus, this Court lacks subject matter jurisdiction over Yu's claims.[27]

## III.   CONCLUSION

For these reasons, Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is granted. This case will be dismissed if Plaintiff does not transfer the case to the Superior Court within 60 days pursuant to 10 *Del. C. §* 1902.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*
Vice Chancellor

---

[27]   Because this Court lacks subject matter jurisdiction, I do not consider Defendants' arguments under Rule 12(b)(2) and 12(b)(6).