**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| IN THE MATTER OF TUEBOR | ) | |
| ADVISORS, a Delaware | ) | C.A. No. 2020-1002-KSJM |
| unincorporated association | ) | |

**ORDER RESOLVING MOTIONS TO DISMISS OR STAY THIS ACTION**

1.      Petitioner Rhona Thompson ("Rhona")[1] has filed a petition for the appointment of a custodian for Tuebor Advisors ("Tuebor"), a Delaware unincorporated association formed under the Delaware Uniform Unincorporated Nonprofit Association Act.[2]

2.      Tuebor has two voting members:  Rhona and her husband, Richard Thompson ("Rick") (together with Rhona, the "Thompsons").[3]  The Thompsons formed Tuebor to manage "the various trusts and entities holding the vast majority of [their] wealth."[4]

3.      The Thompsons reside in California.[5]  On June 26, 2019, Rick filed for divorce in a California state court (the "Divorce Proceeding").[6]

---

[1] Because the parties share a last name, the court refers to them by their first names for clarity. The court intends no disrespect.

[2] *See* C.A. No. 2020-1002-KSJM, Docket ("Dkt.") 28, Verified Am. Pet. for Appointment of a Custodian ("Am. Pet.") ¶ 6.

[3] *Id.* ¶ 1.  Rhona and Rick's children are also members of Tuebor, "but the rights and obligations of a member under the age of 25 are not exercisable," and neither of their two children have reached the age of 25.  *Id.* ¶ 8.

[4] *Id.* ¶ 1.

[5] *Id.* ¶¶ 4–5.

[6] Dkt. 34, Interested Party Richard Thompson's Opening Br. in Supp. of His Mot. to Dismiss the Am. Pet. for Appointment of a Custodian ("Rick's Opening Br.") at 3; *see* Am. Pet. ¶ 1.

1

4. Section 6.05 of Tuebor's Bylaws (the "Bylaws") provides that "[a]s to matters not governed by the Company's Certificate of Formation or these Bylaws, the Company chooses to be governed by those provisions of the Delaware General Corporation Law applicable to nonstock corporations, even though the Company is an unincorporated association and not a nonstock corporation."[7]

5. Section 3.03 of the Bylaws designates Amelia Renkert-Thomas as an "initial director" of Tuebor.[8] It further provides: "[T]he directors shall be elected at each annual meeting of Members by the vote of a majority of the Members. Each director shall hold office until the next annual meeting of Members and until his or her successor has been duly elected and qualified, or until his or her earlier death, resignation or removal."[9] Renkert-Thomas currently serves as Tuebor's sole director.[10]

6. Rhona believes that Renkert-Thomas is managing Tuebor to Rick's benefit and Rhona's detriment.[11] The Amended Petition alleges three instances of this supposed bias.

---

[7] Am. Pet. Ex. B § 6.05. Tuebor Advisors' Certificate of Formation contains a substantively identical provision. *See* Am. Pet. Ex. A art. IV ("As to matters not governed by this Certificate or the Association's bylaws, the Association chooses to be governed by those provisions of the Delaware General Corporation Law (the 'DGCL') applicable to nonstock corporations, even though the Association is an unincorporated association and not a nonstock corporation.").

[8] Am. Pet. Ex. B § 3.03.

[9] *Id.*

[10] *See* Am. Pet. ¶¶ 9, 17.

[11] *See id.* ¶¶ 46–48 ("As a result of the . . . deadlock[] and personal conflicts between [Renkert-Thomas] and each of the Members, Tuebor Advisors' management is left in a dysfunctional stasis, unable to move forward.").

2

a.  First, Renkert-Thomas, who jointly represented the Thompsons in their estate planning, counseled Rhona to execute a revocation of the Thompsons' premarital agreement in 2009.[12] This allowed Rick to avoid making certain required payments to a joint pool of marital income.[13] Rhona later confronted Renkert-Thomas about this issue, and the two entered into a tolling agreement that preserved Rhona's ability to bring a malpractice claim against Renkert-Thomas.[14] That agreement is still in effect.[15]

b.  Second, Renkert-Thomas caused Tuebor to approve a $14 million investment in "Idle Games, a gaming start-up for which Rick was a board director."[16] According to the Amended Petition, "Rhona begged [Renkert-Thomas] 'to stop Rick' before proceeding with that investment," but Renkert-Thomas ignored Rhona's plea and the Thompsons ultimately lost the entirety of their investment.[17] Rhona contends that the Idle Games investment is emblematic of Renkert-Thomas' investment decisions made to benefit Rick by funding companies in which he has personal investments or on whose board he serves.[18]

---

[12] *Id.* ¶¶ 15, 22–25.

[13] *Id.* ¶¶ 22–23.

[14] *Id.* ¶¶ 25–28, 31.

[15] *Id.* ¶ 31.

[16] *Id.* ¶ 35.

[17] *Id.*

[18] *Id.* ¶¶ 34–39.

c.     Third, Renkert-Thomas has refused to make cash distributions necessary for Rhona to cover her personal living expenses during the Divorce Proceeding while simultaneously approving Rick's request to liquidate $20 million worth of stock.[19]  This liquidation appears, however, to have facilitated Rhona's request for distributions.[20]

7.     On June 26, 2020, Rhona asked Renkert-Thomas to resign as Tuebor's sole director.[21]  Renkert-Thomas was concerned that resigning absent a successor would harm Tuebor, so she conditioned her consent to resign on the Thompsons both agreeing to her replacement.[22]  The Thompsons did not reach such an agreement, and Renkert-Thomas remains Tuebor's sole director.[23]

8.     On November 10, 2020, Tuebor held its annual meeting.[24]  Rick nominated Renkert-Thomas to stay on as sole director of Tuebor; Rhona nominated a replacement.[25]  Both parties voted for their nominee, resulting in a deadlocked vote.[26]  The deadlock

---

[19] *See id.* ¶¶ 49–51, 53–58.

[20] *See id.* ¶¶ 53–58.

[21] *Id.* ¶ 40.

[22] *Id.* ¶¶ 41–42.

[23] *See id.* ¶¶ 42–43.

[24] *Id.* ¶ 59.

[25] *Id.* ¶ 61.

[26] *Id.*

triggered Section 3.03 of Tuebor's Bylaws causing Renkert-Thomas to remain as a holdover director.[27]

9.    On November 20, 2020, Rhona filed this action seeking the appointment of a custodian for Tuebor.[28]  She then filed an Amended Petition on December 29, 2020 (the "Amended Petition"), which asserts two counts.  Count I seeks appointment of a custodian pursuant to 8 *Del. C.* § 226(a)(1); Count II seeks the same pursuant to this court's general equitable power under 10 *Del. C.* § 341.[29]

10.    Rick has moved to dismiss or, in the alternative, stay the action pursuant to Court of Chancery Rules 12(b)(1), 12(b)(3), and 12(b)(6).[30]  Tuebor has joined in Rick's 12(b)(1) and 12(b)(3) motions but takes no position on Rick's 12(b)(6) motion.[31]  The parties fully briefed the motions, and the court heard oral argument on February 18, 2021.[32]

---

[27] *See* Am. Pet. Ex. B § 3.03 ("Each director shall hold office until the next annual meeting of Members and until his or her successor has been duly elected and qualified . . . .").

[28] *See* Dkt. 1, Verified Pet. for Appointment of a Custodian Under 8 *Del. C.* § 226.

[29] *See* Am. Pet. ¶¶ 66–84.

[30] *See* Dkt. 34, Interested Party Richard Thompson's Mot. to Dismiss, with Prejudice, the Am. Pet. Pursuant to Ct. of Chancery Rules 12(b)(1), 12(b)(3), and 12(b)(6).

[31] Dkt. 35, Mot. to Dismiss and Joinder of Nominal Def. Tuebor Advisors.  Tuebor has not offered independent bases for dismissal but filed a reply brief to address Rhona's claims that Renkert-Thomas' status as a holdover director is improper and that Rhona currently faces harm from Renkert-Thomas' continued management of Tuebor.  *See* Dkt. 43, Nominal Def. Tuebor Advisors' Reply in Further Supp. of Its Mot. to Dismiss the Verified Am. Pet. for Appointment of a Custodian ("Tuebor's Reply Br.") at 2–6.  Tuebor adds that its interest in dismissal of this suit pertains to minimizing its litigation costs and is not indicative of any bias in favor of Rick.  *See id.* at 6–7.

[32] *See* Rick's Opening Br.; Dkt. 39, Pet'r's Answering Br. in Opp'n to the Mot. to Dismiss the Verified Am. Pet. for Appointment of a Custodian ("Rhona's Answering Br."); Dkt. 42, Interested Party Rick Thompson's Reply Br. in Supp. of His Mot. to Dismiss the Verified Am. Pet. for Appointment of a Custodian ("Rick's Reply Br."); Tuebor's Reply Br.; Dkt. 50, Tr., Feb. 18, 2021, Telephonic Oral Arg. on Interested Party Richard Thompson's Mot. to Dismiss, with Prejudice, the Am. Pet. ("Oral Arg. Tr.").

11.     The motions to dismiss for lack of subject matter jurisdiction pursuant to Court of Chancery Rule 12(b)(1) are DENIED.

a.      "As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[33] When determining whether a plaintiff has met its burden of pleading "facts sufficient to establish the Court's subject matter jurisdiction," the court must "accept the material factual allegations in the complaint as true, and all inferences therefrom should be construed in the non-moving party's favor."[34]

b.      When determining whether a plaintiff's claim or request for relief is equitable in nature, this court looks "beyond the remedies nominally being sought, and focus[es] upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing" their claim.[35] This court therefore elevates

---

[33] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citing 10 *Del. C.* §§ 341–42).

[34] *PPL Corp. v. Riverstone Hldgs, LLC*, 2020 WL 3422397, at *3 (Del. Ch. June 22, 2020); *see also Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 588 (Del. 1970) (holding that the court must "view the material factual allegations of the complaint as true . . . on a motion to dismiss the complaint for want of jurisdiction," because this court's jurisdiction "depends solely, at this stage, upon the allegations of the complaint and a determination of what the plaintiff really seeks" (citing *DuPont v. DuPont*, 85 A.2d 724, 726 (Del. 1951))); *Kostyszyn v. Martuscelli*, 2014 WL 3510676, at *3 (Del. Ch. July 14, 2014) ("[W]hen a challenge under Rule 12(b)(1) is directed to the face of the complaint, the court accepts the plaintiff's allegations of facts." (citing *Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *3 (Del. Ch. Apr. 30, 2014))).

[35] *Pitts v. City of Wilm.*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

substance over form and will dismiss for lack of jurisdiction a complaint that amounts to a mere "incantation of magic words."[36]

    c.    Having evaluated the substance of Rhona's claim and request, the court is satisfied that they are sufficient to invoke equitable jurisdiction. The Amended Petition states a claim in equity—mismanagement of Tuebor by its sole director.[37] It also states a claim for equitable relief—appointment of a custodian to replace Renkert-Thomas as Tuebor's sole director.[38] Rick raises extensive arguments to complicate the analysis, none of which are persuasive.[39]

12.    The motions to dismiss for improper venue pursuant to Court of Chancery Rule 12(b)(3) and *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.* are DENIED.[40]

    a.    On a motion to dismiss under Rule 12(b)(3), "the court 'is not shackled to the plaintiff's complaint' and 'is permitted to consider extrinsic evidence

---

[36] *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 113 (Del. Ch. 2017) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).

[37] *See, e.g., QC Commc'ns Inc. v. Quartarone*, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013) (describing a "claim for breach of fiduciary duty" as "an equitable claim—perhaps *the* quintessential equitable claim" (citing *McMahon*, 532 A.2d at 604)).

[38] *See, e.g., Feldman v. Soon-Shiong*, 2018 WL 2124063, at *6 (Del. Ch. May 8, 2018) ("Using its equitable powers, the court may appoint 'a custodian or receiver upon a showing of fraud, gross mismanagement, positive misconduct by corporate officers, breach of trust, or extreme circumstances showing imminent danger of great loss which cannot otherwise be prevented.'" (quoting *Zutrau v. Jansing*, 2013 WL 1092817, at *5 (Del. Ch. Mar. 18, 2013))).

[39] *See* Rick's Opening Br. at 15–21 (arguing that 8 *Del. C.* § 226 is insufficient to establish this court's jurisdiction over the Amended Petition); *id.* at 21–34 (arguing that 10 *Del. C.* § 341 is insufficient to establish this court's jurisdiction over the Amended Petition).

[40] *See* 263 A.2d 281 (Del. 1970); Rick's Opening Br. at 11–15.

from the outset.'"[41] "Courts traditionally dismiss a matter under Rule 12(b)(3) when[,] . . . applying the doctrine of *forum non conveniens*, Delaware is clearly not the appropriate forum for litigation."[42]

b.     *McWane* provides the framework for this court's *forum non conveniens* analysis in the context of a first-filed action in another forum.[43]  A *McWane* analysis relies on three factors:  "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues?"[44]  This court's discretion to award a stay under *McWane* "should be freely exercised in favor of the stay."[45]

c.     Although "[a] party may move for either a stay or dismissal under *McWane*, . . . dismissals are rarely granted when the first-filed doctrine is invoked."[46]  Under *McWane*, "it is preferable to merely stay the later-filed action because it is impossible to predict with certainty the course of earlier-filed litigation in another jurisdiction."[47]

---

[41] *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007) (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *4–5 (Del. Ch. Oct. 19, 2000)).

[42] *Lefkowitz v. HWF Hldgs, LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009).

[43] *See McWane*, 263 A.2d at 284.

[44] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).

[45] 263 A.2d at 283.

[46] 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 5.01[a], at 5-3 (2nd ed. 2020).

[47] *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *6 (Del. Ch. Apr. 12, 1994).

d.     In this case, dismissal would be inappropriate. There is no question that the Divorce Proceeding constitutes a first-filed action satisfying the first factor of *McWane*,[48] but it is unclear at this posture whether the California court is capable of rendering complete justice and the degree to which the Divorce Proceeding involves the same issues.

e.     It seems likely that the California court can provide complete justice concerning the ultimate issue in this case: control over the Thompsons' marital assets. The Divorce Proceeding will presumably determine how those assets, including Tuebor, should be divided between the Thompsons.[49]

f.     Rhona correctly notes, however, that the California court may leave open the precise issues presented in this action "relating to the deadlock of Tuebor."[50]

g.     Given the uncertainty of the degree to which the Divorce Proceeding will resolve the issues presented in this case, dismissal is inappropriate.

13.    The motions to stay this action pursuant to *McWane* in favor of the Divorce Proceeding are GRANTED.

---

[48] *See* Rhona's Answering Br. at 13; *see also Cruz v. Cruz*, 2020 WL 6044642, at *4 (Del. Ch. Oct. 9, 2020) (finding that a first-filed divorce proceeding "is a prior-pending action for the purposes of *McWane*").

[49] Rhona argues that the California court lacks personal jurisdiction over Tuebor due to insufficient contacts with the state. *See* Rhona's Answering Br. at 18–21. This decision does not resolve that issue, which is best addressed by the California court.

[50] *See* Rhona's Answering Br. at 19–21.

9

a.	This court has broad discretion to grant scheduling relief in the form of a stay.[51]  Stays are particularly appropriate where prior actions involve similar parties and issues, and where a stay would further "considerations of comity and the necessities of an orderly and efficient administration of justice."[52]  Stays help avoid "the wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts," as well as "the possibility of inconsistent and conflicting rulings and judgments and an unseemly race by each party to trial and judgment in the forum of its choice."[53]

b.	A stay of this proceeding would further the orderly and efficient administration of justice and help avoid the wasteful duplication of time, effort, and expense that would result from the simultaneous adjudications of this case in Delaware and the Divorce Proceeding in California.

c.	A stay will not harm Rhona.  For the opposite proposition, Rhona cites *Cruz v. Cruz*, in which this court expedited claims that implicated the control and operation of Delaware entities while a divorce proceeding was pending in California.[54]  In *Cruz*, a married couple had formed various Delaware limited

---

[51] *See In re Bear Stearns Cos., Inc. S'holder Litig.*, 2008 WL 959992, at *5 (Del. Ch. Apr. 9, 2008) ("Under the first-filed rule, this Court freely exercises its broad discretion to grant a stay . . . .").

[52] *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010) (quoting *McWane*, 263 A.2d at 283).

[53] *McWane*, 263 A.2d at 283.

[54] *See* Rhona's Answering Br. at 21 (quoting *Cruz*, 2020 WL 6044642, at *6).

10

liability companies to manage their marital assets.[55] The couple exercised direct control over the entities, and, upon their divorce, one spouse acted to unilaterally remove the other as a manager of those entities.[56] The aggrieved spouse sued in this court challenging the validity of that removal, and the court provided expedited relief invalidating the removal while staying the remainder of the claims in favor of a first-filed California divorce proceeding.[57]

d.      In this case, unlike in *Cruz*, the company is under the control of non-family member Renkert-Thomas.[58] Even accepting as true Rhona's allegations concerning Renkert-Thomas' alleged bias toward Rick, they do not warrant moving this action forward in parallel with the Divorce Proceding. Of the three allegations concerning Renkert-Thomas' alleged mismanagement of Tuebor, two involve actions long past. Termination of the prenuptial agreement occurred in 2009.[59] The Idle Games investment occurred in 2011.[60] These complaints, standing alone, are insufficient to demonstrate that Renkert-Thomas is *currently* mismanaging Tuebor to Rick's advantage. The third example appears to have been in response to Rhona's

---

[55] 2020 WL 6044642 at *1–3.

[56] *Id.*

[57] *Id.* at *1–2, *7.

[58] *See* Am. Pet. Ex. B § 3.03 ("Each director shall hold office until the next annual meeting of Members *and until his or her successor has been duly elected and qualified . . . .*" (emphasis added)); *Cruz*, 2020 WL 6044642, at *6 ("In this case, it was appropriate for the Court to expeditiously resolve the [validity of the unilateral removal of one spouse as manager of martial LLCs], which implicated the control and operation of Delaware entities.").

[59] *See* Am. Pet. ¶¶ 23–25.

[60] *See* Rick's Reply Br. at 7; Tuebor's Reply Br. at 4; Oral Arg. Tr. at 8–9.

demands for distribution and therefore does not support the narrative Rhona has asserted in this case.

14.    Because a stay is warranted, the court need not resolve Rick's motion to dismiss pursuant to Court of Chancery Rule 12(b)(6) at this time.

15.    For the foregoing reasons, this matter is STAYED pending resolution of the first-filed Divorce Proceeding.

IT IS SO ORDERED.

/s/ Kathaleen St. J. McCormick
Vice Chancellor Kathaleen St. J. McCormick
Dated:  May 4, 2021